# UNITED STATES DISTRICT COURT
## for the
### Northern District of Texas

| | |
|---|---|
| United States of America<br>v.<br><br>FAUSTO MONTES JR.<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  5 - 19MJ-0134<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 22, 2019__ in the county of __Lubbock__ in the __Northern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 2422(b) | Enticement of a Minor |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Keith Quigley, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/29/19

*Judge's signature*

City and state: Lubbock, Texas

D. Gordon Bryant, Jr., U.S. Magistrate Judge
*Printed name and title*

Filed: 2019 AUG 29 AM 8:51

## AFFIDAVIT IN SUPPORT OF COMPLAINT

1. My name is Keith Quigley. I am a Special Agent (SA) employed by the Federal Bureau of Investigation (FBI), United States Department of Justice, and I have been so employed for 21 years. I have been assigned to the Lubbock, Texas, Resident Agency since 1998. I have handled many investigations involving child exploitation and child pornography. As an FBI SA, I am authorized to investigate crimes involving the sexual exploitation of children, in violation of Title 18, United States Code, Section 2422. Section 2422(b) makes it a federal offense to use the mail or any facility or means of interstate commerce, including by a computer, or within the special maritime and territorial jurisdiction of the United States, to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so. There are four elements to this offense:[1]

> *First.* That the defendant knowingly persuaded, induced, enticed, coerced, or attempted to persuade, induce, entice, or coerce, an individual to engage in any sexual activity, or prostitution as charged;
>
> *Second.* That the defendant used the Internet, a telephone, a cell phone, or any facility or means of interstate or foreign commerce to do so;
>
> *Third.* That the defendant believed that such individual was less than 18 years of age;
>
> *Fourth.* That, had the sexual activity actually occurred, the defendant could be charged with the criminal offense of Section 22.011 (Sexual Assault of a Child) under the laws of Texas.

---

[1] Fifth Circuit Pattern Jury Instruction 2.91 (2015).

1

There are an additional three elements to the offense of Sexual Assault of a Child under Texas law which are as follows:

*First.*  The defendant is 17 years of age or older;

*Second.*  The defendant knowingly or intentionally: (a) caused the penetration of the anus and sexual organ of a child (a person younger than 17 years of age, not the spouse of the actor) by any means; or (b) caused the penetration of the mouth of a child by the sexual organ of the actor; or (c) caused the sexual organ of a child to contact and penetrate the mouth, anus, or sexual organ of another person, including the actor; or (d) caused the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or (e) caused the mouth of a child to contact the anus and sexual organ of another person, including the actor; and

*Third.*  This happened in Texas.

2. I am the case agent on a child sexual exploitation case in which Fausto Montes Jr. (date of birth – 09/10/1979 – 39 years old) is the subject. The information used to support this complaint was derived from reports and information obtained from investigations conducted by law enforcement related to the incident. This complaint contains information necessary to establish probable cause to believe that the criminal offense described herein was committed by the defendant; it is not intended to discuss every fact and matter known to this investigation. Moreover, to the extent that this complaint contains witness statements, those statements are set forth only in part and relevant substance and are intended to accurately relay the information, but are not verbatim recitations. All times are approximate.

3. On August 20, 2019, Lubbock Police Department (LPD) Special Operations Detective Chris Key began posing as a 15-year-old female using the application "MeetMe". MeetMe uses an array of social discovery applications in order to connect individuals to other individuals near the place they reside.

4. Montes made contact with the UC on the MeetMe app utilizing the name Steven. After being contacted by Montes, a brief conversation occurred before the UC redirected the conversation to text message via UC LPD cell phone.

5. The conversation between Montes and the UC began casually. Montes bragged about how much money he made in an attempt to impress the UC.

6. Montes spoke to the UC about having a good work ethic in order to succeed. Around this time in the conversation, the UC told Mr. Montes "I figure only being 15 I have a lot of room to grow haha". Montes continued to text with the UC after being told she was 15 years old. Montes advising he hoped that the UC did not outgrow him. The UC advised Montes that she was four feet and nine inches tall. Montes told her, "like a fun size candy bar."

7. The conversation continued into the evening of the August 20, 2019. Montes began asking about the UC's mother and her schedule. Montes then asked the UC "Am I a secret? Lol. Are you rebelling by talking to me? I don't care." The UC told Montes "Haha I'm not rebelling but ya you're my secret (emoji)" Montes told the UC, "I like the sound of that, that I'm "your" secret" "like I belong to you." Montes

3

then told the UC that, "You are in the ball park of my type….." The UC told him a few things that the UC enjoyed. Montes told the UC his type, and told the UC, "Yes, you sound perfect". Further into the conversation, Montes stated "Except your age" acknowledging that he knew and had comprehended that UC told him she was 15 years old. The UC then asked Montes "My age? Why does me being 15 matter?" Montes stated, "But your friends, the law, your folks? Not sure how all that works, lol" showing once again that Mr. Montes knew the direction the conversation was beginning to take was not acceptable. Montes subsequently stated, "I have dated a. 17 and 16 before but I didn't know, they told me they were older until aft the fact, lol I'll be your secret If you can really keep a secret. Don't want your friends telling".

8. Montes knew the UC's age, verbally disregarded it, and continued expressing interest in the UC. Montes asked questions about ways to avoid detection, such as when and how to text the UC, indicating that he knew the illegality and inappropriateness of everything that was occurring between himself and the UC.

9. Montes requested a picture from the UC and provided two pictures of himself. Montes began asking how UC and he could go to see a rated R movie together. Montes advised that he could not wait to have all kinds of fun with the UC. The UC asked Montes what kind of fun he was thinking about. Montes stated, "I can imagine a lot with time" and "it just depends on how much time you have or can get away with."

10. On the morning of August 21, 2019, the conversation continued and Montes advised that he hoped the UC had slept well and told the UC that he missed her. In an effort to obtain vehicle information from Montes, the UC asked him if he had a fast car. Montes told the UC he had a 1992 Mercedes Benz, a 2006 GMC Yukon, a 2010 Chevrolet Impala, and a 2015 Nissan Versa.

11. In the afternoon of August 21, 2019, the UC told Montes that her mother works on Thursday August 22, 2019. Montes asked the UC what time she worked. The UC told him that she would not be home until approximately 5:00 p.m.. Montes stated that he had hoped he could see the UC today but that he understood if UC's mom was home. Montes began attempting to find ways to meet with the UC, asking if he could take the UC home from school, and asked if UC went home if UC could sneak back out to see him. Montes continued trying to find a way to see the UC and was extremely persistent until UC finally advised that if he wanted to see the UC he would wait until the August 22 and stated that the UC did not want us to get caught. The conversation from this point continued to become more and more inappropriate. At one point, Montes told the UC, "I want to hold you, cuddle you, touch you, feel you next to me, against me."

12. On the morning of August 22, 2019, the conversation between Montes and the UC continued. Montes told the UC that he wanted to continue talking with the UC the previous night although he did not want to sound like a pervert by taking it too far with the UC. The UC told him that he could not go too far, advising him they know each

5

other now. Montes then advised "Well before I tell you what I'm going to do with you, I have one thing that I need to tell you so that you are aware". Montes then proceeded to tell the UC, "I can't use condoms". At this point the conversation had been flirty and the two had repeatedly discussed getting together so the UC believed Montes wanted to have sex despite the fact he told Montes she was only 15 years old.

13. The UC asked Montes if she could trust him to pull out before he ejaculated if they did have sex. Montes stated "Yes hun, you can trust me to pull out...." and then later advised "But to answer you,, yes you can completely trust me to pull out,, trust me,, I promise. I don't want anything happening before we are ready for it." Montes then went into the reasoning behind why he could not use condoms when having sex, stating it was doctor ordered. Montes then gave a description of what had occurred causing his sexual injury. Montes advised that if he wore a condom he would only be able to keep an erection for approximately five minutes.

14. The UC asked Montes if he wanted to "do it" today. Montes stated, "Yes if we can and have time. I want to be yours. Your big bad secret and you're going to be my dirty little secret. I want to bounce you on my thickness, hehe. I want to pick you up and carry you on it. I want to have all of the fun we can have and then afterwards I want to cuddle with you and hold you tight. I do want us to be special for each other."

15. The UC asked Montes if she were to leave early (from school), could they meet up. The UC and Montes began working out a plan to meet. The final plan was for the UC to sneak out of a local high school at 2:30 p.m. and walk to a nearby restaurant where he would be waiting to pick up the UC. The UC asked Montes how she would know it was him when she walked to the location. Montes stated that he would message the UC when he saw her walking in that direction. Montes then confirmed they would need to go to UC's house. The UC told Montes that if they were to go to UC's residence he would have to leave by 4:30 p.m. in an effort not to get caught by UC's mother. Montes advised that he understood.

16. At 2:30 p.m., UC approached the restaurant and had a uniformed patrol officer staged nearby. The UC advised Montes that she was now attempting to sneak out.

17. As the UC approached the area, the UC immediately observed an older model Mercedes Benz car parked in the restaurant parking lot. Montes had previously told the UC that he owned a 1992 Mercedes Benz. The UC retrieved the license plate number which showed to be registered to Fausto Montes with a residential address listed in Lubbock, Texas. The UC also observed a heavy set Hispanic male sitting in the vehicle. The vehicle then began to drive around the area, never straying far from the restaurant or the school. At one point, the UC observed Montes turn northbound into the 3300 block of Salisbury Ave. As Montes came to 32nd Street on Salisbury Ave, he turned around and drove back southbound towards the restaurant. The UC took a photo of Montes as

7

he drove southbound while the UC was headed northbound on Salisbury Ave. The UC advised the marked unit of Montes' location and what he was driving. The officer made a traffic stop on Montes as he drove in the area and was able to positively identify Fausto Montes as the driver.

18. As the LPD officer made the traffic stop on Montes, the UC told him she was coming out to meet him. Montes requested the UC go to a different location because he had to leave the area to urinate. The UC advised him that she was going to go back inside of the school since he was not in the area. Montes did not inform the UC that he had been stopped by police. Montes advised that he also had to defecate and that is why it took him so long. Montes had arrived to the area to pick up the UC from outside her school in order to go have sexual intercourse at her mother's residence while she was at work. Despite an LPD officer stopping Montes, he continued texting the UC for a considerable period of time to persuade her to meet up with him.

19. During later parts of the text conversation, Montes was still attempting to get the UC to meet him. Montes stated, "Will you come? Please. You know I even thought about renting out our own place, like a little apartment in time. I hope you will. I think I have proven myself to you by waiting over an hour in the heat." Montes then confirmed over text that he was in his son's black Mercedes.

20. Montes tried incessantly to meet up with the UC after the previous attempt had been thwarted by the traffic stop by the LPD officer. In his plea for UC to meet up

with him, Montes said things like "I miss you" and "will you call me daddy?" He also stated, "I really want you. I was truly hoping for forever. I would take care of you and make you happy forever."

21. Montes then stated, "If I showed it to you would that make you happy and talk to me. I have a pic." The UC asked Montes what picture he was going to show. Montes then sent a picture of his erect penis, stating, "There it is, now you know. Do you want u. Still want me?" The UC did not immediately respond.

22. On August 23, 2019, Montes began texting the UC early in the morning. Montes asked if the UC had received the picture of his penis and then stated "Well I hope you want it. I want you to have it. I want it to be yours. I want to spin you on it." At this time the UC advised "I can't wait." Montes asked "For real you want it? It excited you?" The UC told him that it did and he began asking the UC to tell him exactly why it had.

23. On the afternoon of August 23, Montes advised UC he would be picking up a shift to work overnight with a child. He also still continued to try and meet with the UC. Montes requested pictures of the UC's genitals stating the UC had seen his and he wanted to see what was his, talking about the UC's vagina.

24. Montes and the UC began conversing about his job. The UC asked him what he did at work, to which he advised that he saves lives. Montes stated that he does private duty pediatric home health, advising that this evening he would be taking care of one kid on a breathing machine and feeding machine. Montes stated that he would

9

take pictures of his patient and send them to the UC, despite the UC never asking for anything of the sort. Montes again stated "I promise I am real, that's why I'm going to show you my work and patient so you know I'm being honest."

25. Friday evening August 23, Montes sent the UC pictures of a child lying in bed connected to what appeared to be medical devices. The child was wearing a diaper, a red shirt and appeared to have brown hair. Montes advised "This is him and his equipment." Montes also advised that he hoped the UC believed that he was real because he was risking a lot sharing pictures of his patient.

26. Later that evening, Montes continued sending the UC messages that the UC did not respond to. He then asked if the UC would show him what was his again, talking about a vaginal picture. Montes advised that since he had shared his penis with the UC he wanted the UC to share a picture of her vagina. Montes also stated "but I want you forever, I want you to know that. I am falling completely for you. I belong to you. And you know what you are getting. I just want the same in return. I am risking a lot for all that I have shared with you. Because I care for you, like you, want you, and falling in love with you."

27. On August 25, 2019, Montes continued texting the UC. Montes stated "And why do you think young is a problem? I like young, I only like young."

28. Throughout the UC's conversation with Montes, it was made clear to him that the UC was 15 years old.

29. On August 27, 2019, Montes was arrested on a State of Texas charge of Online Solicitation of a Minor and was booked into the Lubbock County Detention Center. During the arrest, Montes was found to be in possession of two cellular telephones, one located on his person and the other located in a backpack in his vehicle. Montes used one or both of the phones to communicate with the UC. Those phones are both Verizon LG V20 cellular telephones. The one Verizon LG V20 located on his person had an IMEI number bearing 359968072432029. LG V20 phones are Android phones manufactured by LG Electronics Inc. as part of the LG V series. LG Electronics Inc. is a South Korean multinational electronics company headquartered in Yeouido-dong, Seoul, South Korea. Phones made by LG Electronics Inc. are manufactured at one of their plants in South Korea, and therefore, prior to Montes' use of either of these cell phones, they affected interstate and foreign commerce.

30. Texas Penal Code Section 22.011 makes it a crime to intentionally and knowingly cause the penetration of the anus and sexual organ of a child (a person younger than 17 years of age, not the spouse of the actor) by any means, to cause the penetration of the mouth of a child by the sexual organ of the actor, to cause the sexual organ of a child to contact and penetrate the mouth, anus, and sexual organ of another person, including the actor, to cause the anus of a child to contact the mouth, anus, and sexual organ of another person, including the actor, and to cause the mouth of a child to contact the anus and sexual organ of another person, including the actor. Throughout the conversation, Montes discusses his plans to have vaginal intercourse with the UC which would be a

crime under Section 22.011 of the Texas penal code. Montes was an individual over the age of 18 and believed UC to be under the age of 17 at the time of the communication.

31.   Montes and the UC were located in Lubbock, Texas, in the Lubbock Division of the Northern District of Texas, and elsewhere, during the course of the communications and Montes enticement of what he believed to be a 15-year-old girl. Montes knowingly communicated in a way directly intended to persuade, induce, entice, or coerce UC in to engaging in sexual activity with him. During all relevant portions of the conversation between UC and Montes, Montes believed UC to be 15 years of age.

32.   On August 27, 2019, subsequent to the arrest of Montes, the LPD requested FBI assistance investigating this matter.

33.   Based on the information above, I have probable cause to believe that Fausto Montes Jr. Title 18, United States Code, Section 2422(b), that is, Enticement of a Minor, and respectfully ask that this Court issue a warrant for his arrest.

_____
Keith Quigley
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this __29th__ day of August 2019, and I find probable cause.

_____
D. GORDON BRYANT JR.
UNITED STATES MAGISTRATE JUDGE

12